IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANNON SZUSZALSKI, as personal representative
for the ESTATE OF LINDA BARAGIOLA, and
SHANNON SZUSZALSKI, individually,

      Plaintiff,

v.                                                                                               No. 1:19-cv-0250 RB-CG

RUDY FIELDS, SANDOVAL COUNTY, SHERIFF
DOUGLAS C. WOOD, and JANET LOPEZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of the tragic death of Ms. Linda Baragiola, who was a close friend and neighbor of Defendant Janet Lopez. At Ms. Lopez's request, Ms. Baragiola went onto Ms. Lopez's property to check on her dogs after her home's security alarm was triggered. Law enforcement officials also arrived at the home and questioned Ms. Baragiola. As Ms. Baragiola was walking home, Defendant Rudy Fields, a law enforcement officer who was preparing to respond to a non-emergency call, backed his police vehicle into Ms. Baragiola and ran her over.

Ms. Shannon Szuszalski, on behalf of herself and as personal representative of the Estate of Ms. Baragiola (Plaintiffs), have filed a claim against Ms. Lopez based on negligence/premises liability. Ms. Lopez has moved to dismiss the claim. For the reasons discussed herein, the Court will grant Ms. Lopez's motion.

**I.**     **Background**

Ms. Baragiola and Ms. Lopez were friends and neighbors. (Doc. 1-A-3 (Am. Compl.) ¶¶ 16, 22.) Ms. Lopez has a security system installed in her home through a company called The Alarm Store. (*Id.* ¶ 25.) She gave Ms. Baragiola the key to her home "and designated her as the

back-up contact person with . . . The Alarm Store." (*Id.*) Whenever the security system was triggered and the alarm company could not reach Ms. Lopez, the company would contact Ms. Baragiola instead. (*Id.* ¶ 26.)

Ms. Lopez also owned dogs and frequently asked Ms. Baragiola to check on the dogs when she was not at home. (*Id.* ¶ 24.) On September 28, 2017, Ms. Lopez's security system was triggered and the Alarm Store contacted Ms. Baragiola. (*Id.* ¶ 27.) Ms. Lopez also contacted Ms. Baragiola and asked her to go to the residence, enter her home, and check on the dogs. (*Id.* ¶¶ 27–30.) Ms. Baragiola was on Ms. Lopez's property when law enforcement officers arrived to investigate the alarm. (*Id.* ¶ 32.) Detective Tomlinson, one of the officers who responded to the alarm, questioned Ms. Baragiola during the investigation. (*Id.* ¶¶ 32–33.)

Deputy Fields also responded to the alarm and parked his truck in the U-shaped driveway of Ms. Lopez's "residence, a considerable distance from the street." (*Id.* ¶¶ 39, 77.) Deputy Fields's vehicle was equipped with a front camera, the footage of which shows that Detective Tomlinson spoke with Ms. Baragiola in front of the vehicle, then they walked toward the back of the truck. (*Id.* ¶¶ 132–33.) Deputy Fields was sitting in the vehicle's driver's seat at this time. (*Id.* ¶¶ 34, 37, 131–33.) Ms. Baragiola walked directly behind the truck and toward her own home across the street. (*Id.* ¶¶ 67, 79, 141.)

Deputy "Fields received a call for service from dispatch for a non-emergency matter." (*Id.* ¶ 40.) He wanted to tell another officer, Detective Salas, that he was leaving to respond to the matter. (*Id.* ¶ 43.) Although Deputy Fields could have driven through the U-shaped driveway toward Detective Salas, he instead chose to reverse approximately 50 feet toward the street. (*Id.* ¶¶ 76–78.) While he was reversing his vehicle "at a relatively slow rate of speed" without his emergency lights or sirens activated, he hit Ms. Baragiola with the rear bumper and tailgate of the

truck. (*Id.* ¶¶ 45, 47, 50.) The tire of the truck then drove over Ms. Baragiola, who was still on Ms. Lopez's driveway, causing her death. (*Id.* ¶ 53.)

## II. Legal Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556.)

## III. Local Rules

Before addressing the substance of Ms. Lopez's motion, the Court will consider Plaintiffs' request to deny the motion for failure to comply with Local Rule 7.1(a), which requires the movant to determine whether its motion is opposed. (Doc. 8 at 2–3 (citing D.N.M. LR-Civ. 7.1(a)).) Ms. Lopez notes that she originally filed her motion to dismiss in state court before Defendants removed the case. (Doc. 17 at 2.) "In New Mexico state court, a party is not required to seek . . . concurrence on a dispositive motion . . . ." (*Id.* (citing NMRA, Rule 1-007.1(C)).) Ms. Lopez amended her motion "[o]nly to cite the Federal Rules of Civil Procedure rather than the state court rules" and refiled the motion in this Court. (*Id.*) Ms. Lopez assumed that because the removed

3

action represents a continuation of the state action, "the motion was already before the Court" and she did not need to seek concurrence. (*Id.* (citing *Jenkins v. MTGLQ Inv'rs*, 218 F. App'x 719, 723 (10th Cir. 2007)).) In an effort to cure any oversight, Ms. Lopez's counsel also sought Plaintiffs' position on the motion and was "informed that had concurrence been sought, concurrence would not have been given." (*Id.* (citing Doc. 17-A).)

The Court has discretion to summarily deny a motion if a party fails to establish that it sought concurrence. D.N.M. LR-Civ. 7.1(a) ("a motion that omits recitation of a good-faith request for concurrence *may be* summary denied") (emphasis added); *see also United States v. 16 Mounts, Rugs & Horns Protected by the Endangered Species Act*, 124 F. Supp. 3d 1174, 1176 (D.N.M. 2015). Because Ms. Lopez has attempted to cure her error and it is clear that Plaintiffs would have opposed the motion, the Court prefers to move to the merits of the matter.

**IV.   Ms. Lopez has failed to define a policy reason—detached from foreseeability—to limit her duty of care.**

"Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Lilley v. CVS Health*, No. CV 17-515 KG/JHR, 2019 WL 1396415, at *2 (D.N.M. Mar. 27, 2019) (quoting *Herrera v. Quality Pontiac*, 73 P.3d 181, 185–86 (N.M. 2003), *abrogated on other grounds by Rodriguez v. Del Sol Shopping Ctr. Assoc., L.P.*, 326 P.3d 465, 467–68 (N.M. 2014)). "In New Mexico, '[a]n owner . . . owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor . . . .'" *Lilley*, 2019 WL 1396415, at *2 (quoting UJI 13-1309, NMRA 1998 (2018 ed.)). Ms. Lopez does not dispute that she ordinarily owes visitors, such as Ms. Baragiola, a duty of care to

keep her property safe. (*See* Doc. 4.) Instead, she urges the Court to limit her duty of care for policy reasons. (*See id.* at 5–10.)

A homeowner's "duty of ordinary care applies unless [she] can establish a policy reason, unrelated to foreseeability considerations, that compels a limitation on the duty or an exemption from the duty to exercise ordinary care." *Rodriguez*, 326 P.3d at 469. Ms. Lopez argues that "she owed no duty or ability to control the driving of a sheriff's deputy and cannot be held liable for the deputy's actions." (Doc. 4 at 5.) She asks the Court to "make a legal determination, based on articulated policies," that she did not "owe[] a duty to exercise ordinary care to prevent Ms. Baragiola from being backed over by a sheriff's deputy who chose to drive 50 feet in reverse rather than to drive forward through a driveway to exit the property." (*Id.* at 7.)

Ms. Lopez contends that several New Mexico state decisions provide policy reasons for limiting her "duty of care under the circumstances of this case." (*Id.*) First, in *Edward C. v. City of Albuquerque*, the New Mexico Supreme Court examined the "baseball rule," a court-made rule that limits the ordinary duty of care that a landowner owes a visitor when the landowner is the owner or occupier of a baseball stadium and the visitor is a spectator. 241 P.3d 1086, 1088 (N.M. 2010). Due to the nature of a baseball game, if a spectator sits where there is no screen to protect them from errant baseballs, courts have often found that the spectator has assumed the risk of injury, at least for risks that are predictable. *Id.* at 1092–97 (discussing the history and evolution of the baseball rule). In *Edward C.*, a child attending a pre-game party "in the stadium's picnic area, located beyond the left field wall in fair ball territory[,]" was injured by a baseball that a player hit during batting practice. *Id.* at 1088–89. Considering the public policies underlying the state's pure comparative fault system, "a general interest in promoting safety, welfare, and fairness[,]" and the unique relationship between baseball stadium owners/occupiers and spectators,

5

the court limited the duty a landowner normally owes to visitors. *Id.* at 1091, 1097–98. It found that "[s]pectators must exercise ordinary care to protect themselves from the inherent risk of being hit by a projectile that leaves the field of play and the owner/occupant must exercise ordinary care not to increase that inherent risk." *Id.* at 1097–98. The decision did not change, however, "stadium owners'/occupiers' duty of ordinary care . . . for other premises liability claims." *Rodriguez*, 326 P.3d at 469 (discussing *Edward C.*, 241 P.3d at 1097–98).

Ms. Lopez does not explain why the holding in *Edward C.* supports a policy reason to limit a homeowner's duty in this case. It is worth noting that *Rodriguez* overruled *Edward C.* in part, *id.* at 468, because the *Edward C.* court stated that "[f]oreseeability . . . is but one factor to consider when determining duty . . . ." *Edward C.*, 241 P.3d at 1091. *Rodriguez* clarified that courts are not to consider foreseeability "when determining the existence of a duty, or when deciding to limit or eliminate an existing duty in a particular class of cases." 326 P.3d at 467.

In *Baldonado v. El Paso Natural Gas Co.*, the New Mexico Supreme Court examined the firefighter's rule, which also limits the duty a landowner normally owes to visitors when rescue personnel enter a property to respond to an emergency. 176 P.3d 277, 278–79 (N.M. 2007). States have adopted different versions of the firefighter's rule to bar certain rescue personnel "from suing the party whose actions caused the event to which the [personnel] responded." *Id.* at 280. The rule is generally based on public policy: it encourages people to call for help when necessary; it recognizes the risk inherent in rescue professions; and it "spreads the costs of injury among taxpayers and avoids charging taxpayers twice—once when they pay their taxes for public services, and again when they are sued by those same service providers." *Id.* (citations omitted). In *Baldonado*, firefighters retrieved 12 family members from a horrific fire caused by a ruptured natural gas pipeline. *Id.* at 279. The firefighters brought suit against the gas company for negligent

6

and intentional infliction of emotional distress and other claims. *Id.* The court modified the firefighter's rule as it then existed in New Mexico to give firefighters more latitude to bring suit where the defendant acted recklessly or intentionally, and it based the change on "policy considerations—the need to encourage the public to request rescue from firefighters while discouraging the public from creating the need for rescue through reckless or intentional acts . . . ." *Rodriguez*, 326 P.3d at 469 (citing *Baldonado*, 176 P.3d at 281).

Ms. Lopez draws on *Baldonado* to argue that "[p]ublic policy supports encouraging citizens to assist law enforcement when called upon to do so." (Doc. 4 at 8.) She cites additional authority to support her assertions that "[h]olding neighbors liable for checking on each other's property would contravene the normal things that good neighbors do[,]" and that both courts and law enforcement encourage neighborly behavior as "thefts and crime are deterred and the community is made safer." (*Id.* at 9 (citations omitted).) Ms. Lopez insists that "limiting liability in order to encourage behavior that is deemed desirable is entirely appropriate under New Mexico law." (Doc. 17 at 6.)

While Ms. Lopez argues that policy considerations support limiting her duty as a homeowner, Plaintiffs correctly point out that she primarily bases her argument on foreseeability. (*See* Doc. 8 at 5–18.) Ms. Lopez's brief is peppered with references to the duty of care she owes "under these circumstances" (Doc. 4 at 7 (describing Deputy Fields's choice to reverse for 50 feet)), to the "facts alleged in this case" (*id.* at 8–9 (detailing the facts and noting that there was "in fact no burglar . . . present at the time of the events here")), and to the "impossible task" of imposing "a duty on a homeowner to prevent a law enforcement officer from driving negligently" (*id.* at 9). In short, Ms. Lopez argues that she should bear no duty of care under the "bizarre and unforeseeable" circumstances that caused Ms. Baragiola's death. (*Id.* at 10.) The Court will not

consider Ms. Lopez's stated policy reasons when they are couched in terms of foreseeability, and it will not manufacture policy considerations divorced from foreseeability for her. Consequently, the Court will deny the motion on this basis.

**V.     Plaintiffs have failed to allege facts that demonstrate Ms. Lopez's conduct proximately caused Ms. Baragiola's death.**

In the final two paragraphs of her motion, Ms. Lopez briefly argues that Plaintiffs have failed to allege facts sufficient to demonstrate the proximate cause element[1] of their negligence claim. (Doc. 4 at 5, 10–11.)

> A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred. It need not be the only cause, nor the last nor nearest cause. It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury.

*Id.* at 195 (quoting UJI 13-305 NMRA 2003). "An act or omission may be deemed a 'proximate cause' of an injury if it contributes to bringing about the injury, if the injury would not have occurred without it, and if it is reasonably connected as a significant link to the injury." *Lujan v. N.M. Dep't of Transp.*, 341 P.3d 1, 10 (N.M. Ct. App. 2015) (quotation and citations omitted). "[P]roximate cause is generally a question of fact for the jury." *Herrera*, 73 P.3d at 186 (citing *Calkins v. Cox Estates*, 792 P.2d 36, 38 (N.M. 1990)). "Only when the facts are undisputed 'and the reasonable inferences from those facts are plain and consistent,' does proximate cause become an issue of law." *Lujan*, 341 P.3d at 10 (quoting *Galvan v. City of Albuquerque*, 508 P.2d 1339, 1342 (N.M. Ct. App. 1973)).

---

[1] The 2004 amendments to Civ. UJI 13-305 eliminated the word "proximate" and renamed the section "Causation." *See*, *e.g.*, *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1225 (D.N.M. 2019) (citing Editor's Notes, Civ. UJI 13-305 (noting that the drafters "intended to make the instruction clearer to the jury and [the change] do[es] not signal any change in the law of proximate cause")).

Ms. Lopez relies on *Chavez v. Torres*, 991 P.2d 1 (N.M. Ct. App. 1999). (Docs. 4 at 5; 17 at 5.) (*See* Doc. 8.) *Chavez* involved a homeowner's duty "to control foreseeable criminal activity by a third party on her land that cause[d] personal injury to a visitor of that third party." 991 P.2d at 1. There, the defendant homeowner (Torres) allowed her son, who "had an alcohol problem" and had previously exhibited violent behavior, to keep a key to her house. *Id.* at 2. Without Torres's knowledge, the son brought his girlfriend (Chavez) into Torres's house, where he held Chavez hostage and assaulted her for several hours. *Id.* Chavez called Torres, who was at work, and alerted her. *Id.* Torres asked "a family member to go by the house; however, the family member did not actually visit the house, but only called and was told by someone . . . that everything was all right." *Id.* Chavez finally escaped and later sued Torres and her son. *Id.*

"Chavez argue[d] that Torres owed a duty as a homeowner to exercise reasonable care for her protection while she was in Torres' house as [the son's] guest." *Id.* at 3. The *Chavez* court analyzed Torres's duty to Chavez under Section 318 of the Restatement of Torts.[2] *Id.* at Section 318 provides:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
> (a) knows or has reason to know that he has the ability to control the third person, and
> (b) knows or should know of the necessity and opportunity for exercising such control.

---

[2] The *Chavez* court mentioned UJI 13-1320, the jury instruction involving an owner's duty to a visitor when the visitor is harmed by the acts of third persons, but declined to analyze the issue under the instruction because no New Mexico case has "indicat[ed] this duty has been extended to the owners of non-commercial, private property or homeowners." 991 P.2d at 4. Ms. Lopez also mentioned UJI 13-1320 in passing, but she does not point the Court to any cases to show that the duty applies to homeowners. (Doc. 4 at 4–5.) Thus, the Court analyzes the motion using Section 318, as did the *Chavez* court. *See* 991 P.2d at 4–5.

9

Restatement (Second) of Torts § 318 (1965). The *Chavez* court found that because the evidence was insufficient to meet the elements of the Restatement ("the essential elements [being] notice, opportunity to act, and vicinity"), the district court correctly granted summary judgment in favor of the homeowner, Torres. 991 P.2d at 6. Plaintiffs failed to discuss either *Chavez* or Section 318 in their response. (*See* Doc. 8.)

Here, the facts show that Deputy Fields was leaving Ms. Lopez's property for a non-emergency call. Due to his inattentive driving that was unrelated to Ms. Lopez's security alarm, he hit and killed Ms. Lopez. Plaintiffs have not pled facts to show that Ms. Lopez had "the ability to control" Deputy Fields, nor that she was aware "of the necessity and opportunity for exercising such control" under the circumstances of this case. Restatement (Second) of Torts § 318. Consequently, viewing the facts in a light most favorable to Plaintiffs, the Court finds, as a matter of law, that even assuming Ms. Lopez owed Ms. Baragiola a duty to keep her premises safe and she breached her duty by asking Ms. Baragiola to check on her dogs under these circumstances, Plaintiffs have not and cannot allege facts sufficient to show that this breach was "reasonably connected as a significant link to the injury." *See Lujan*, 341 P.3d at 10. No reasonable juror could find that Ms. Lopez's request to have Ms. Baragiola check on her dogs began a natural or continuous sequence that caused the tragic death here.

**THEREFORE,**

**IT IS ORDERED** that Defendant Janet Lopez's Amended Motion to Dismiss is **GRANTED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE