# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SHANNON SZUSZALSKI, as Personal Representative
for the ESTATE of LINDA BARAGIOLA,
and SHANNON SZUSZALSKI, individually,

      Plaintiffs,

                                                                        No. 19-CIV-00250 RB/CG

   v.

RUDY FIELDS,
SANDOVAL COUNTY
BOARD OF COMMISSIONERS,
SHERIFF DOUGLAS C. WOOD,
JANET LOPEZ,

      Defendants.

**PLAINTIFFS' PETITION AND MEMORANDUM FOR ATTORNEY'S FEES AND COSTS AS ORDERED BY THE COURT ON SEPTEMBER 17, 2019 PURSUANT TO RULE 37(b)(2)(C) –** *See* **[DOC 88 p. 2] AND FOR FEES AND COSTS ASSOCIATED WITH THE FILING OF THIS PETITION FOR SACTIONED FEES**

**COMES NOW** Plaintiffs, Shannon Szuszalski, as Personal Representative for the Estate of Linda Baragiola, and Shannon Szuszalski, individually, by and through their attorney, the Law Office of Cristy J. Carbón-Gaul (Cristy J. Carbón-Gaul), and hereby petition the Court for an order directing County Defendants to pay the Court ordered "mandatory expenses and attorney's fees related to filing the Motion [, [DOC 60],] under Federal Rule of Civil Procedure 37(b)(2)(C)…." [DOC 88 p. 2].  In support of Plaintiffs' motion, Plaintiffs submit the following memorandum and incorporate by reference those facts and arguments made in Plaintiffs' first [DOC 44] and second

[DOC 60] motions to compel:

I.      INTRODUCTION[1]

On September 17, 2019, the Court granted, in part, Plaintiffs' second motion to compel [DOC 60]. *See* [DOC 88, p. 2]. The Court stated, in pertinent part:

> 2.) Plaintiff Shannon Szuszalski's request for an Order compelling Sandoval County Defendants to produce all materials agreed to by the parties, respond completely to all interrogatories, and respond to all requests for admission is **GRANTED**; and
> 3.) <u>Plaintiff Shannon Szuszalski's request for the Court to order mandatory expenses and attorney's fees related to filing the Motion under Federal Rule of Civil Procedure 37(b)(2)(C) is **GRANTED**</u>. *Id* (emphasis added).

On October 21, 2019, Plaintiffs sent County Defendants, through their counsel, Mr. Martin Esquivel, an invoice for the attorney's fees related to the filing of the second motion to compel [DOC 60], along with the previous unpaid invoice relating to Plaintiffs' first motion to compel [DOC 44] which Mr. Esquivel asserted to the Court would be paid by September 26, 2019. *Exhibit No. 1*: October 21, 2019 Correspondence Sent to Martin Esquivel; *see also* [DOC 86, p. 9] ("County Defendants' counsel has agreed to pay Plaintiffs' attorney's fees consistent with this Court's Order [Doc. 52] within two weeks of the Amended Joint Status Report." The Amended

---

[1] On November 19, 2019, Plaintiffs' attempted to resolve this matter without the Court's involvement. *See Exhibit No. 7*: November 19, 2019 Letter to Mr. Esquivel. Plaintiffs requested to have this issue resolved by November 29, 2019. If it was not resolved but November 29th, Plaintiffs informed County Defendants they intended to file a motion for the attorney's fees. As of December 2, 2019, neither Mr. Esquivel nor Mr. Trujillo, County Defendants' attorneys, had responded to Plaintiffs' November 19, 2019 correspondence. On December 2, 2019, Plaintiffs sought concurrence from County Defendants regarding Plaintiffs' Petition and Memorandum for Attorney's Fees and Costs as ordered by the Court on September 17, 2019 Pursuant to Rule 37(b)(2)(C) – *See* [DOC 88 p. 2] in accordance with D.N.M.LR-CIV 7.1(a). On December 3, 2019, Mr. Esquivel responded to this email but failed to indicate whether he concurred or opposed this petition. On January 2, 2020, Counsel sent an email to Mr. Esquivel, once again, requesting his position on the petition. Mr. Esquivel responded on January 2nd requesting a copy of the affidavit Plaintiffs intended to file. Plaintiffs' counsel instructed Mr. Jacks to forward the affidavit with the invoice to Mr. Esquivel. Mr. Jacks forwarded the requested information on the same day. Plaintiffs' counsel requested a response by 5pm on Monday, January 6, 2020, as to County Defendants' position on the petition for fees. Plaintiffs' counsel requested Mr. Esquivel's position on the petition on two separate occasions during email discussions on January 6th. Mr. Esquivel did not give his position. Therefore, given Mr. Esquivel's non-response to Plaintiffs' requests pursuant to D.N.M.LR-CIV 7.1(a), his opposition should be presumed.

JSR was filed on September 12, 2019). Mr. Esquivel did, eventually, tender a cashier's check to satisfy the first award of attorney's fees ordered by the Court on June 24, 2019. *See* [DOC 52].[2] With regard to Plaintiffs' counsel's attorney's fee invoice relating to the filing of Plaintiffs' second motion to compel [DOC 60], Mr. Esquivel erroneously claimed this Court's ordering granting "Plaintiff Shannon Szuszalski's request for the Court to order mandatory expenses and attorney's fees related to filing the Motion under Federal Rule of Civil Procedure 37(b)(2)(C)...." [DOC 88, p. 2], was only referring to the Court's order granting Plaintiffs' first motion to compel and attorney's fees on June 24, 2019 in [DOC 52].

Plaintiffs' have attempted to resolve this matter without the Court's involvement. Plaintiffs' counsel's attempts have not been successful. Therefore, Plaintiffs request the Court review the attorney's fees invoiced for the second motion to compel [DOC 60] and enter an order directing County Defendants to pay the attorney's fees listed or a modified amount deemed reasonable by the Court. Additionally, Plaintiffs' request the Court enter an order directing County Defendants to pay attorney's fees and the costs (including fees associated with Plaintiffs' fee counsel) relating to the present motion for fees.

II. FACTUAL BACKGROUND RELATING PLAINTIFFS' MOTION FOR FEES ORDERED BY THE COURT ON SEPTEMBER 17, 2019 [DOC 88]

1. On September 17, 2019, the Court granted Plaintiffs' "request for an Order compelling Sandoval County Defendants to produce all materials agreed to by the parties, respond completely to all interrogatories, and respond to all requests for admission...." [DOC 88, p. 2].

---

[2] The invoice sent to Mr. Esquivel was for $2869.28. After several assertions that a check would be delivered to Plaintiffs' counsel's office, Mr. Esquivel did deliver a cashier's check in the amount of $2860.00 on October 31, 2019.

3

2. Additionally, the Court granted Plaintiffs' "request for the Court to order mandatory expenses and attorney's fees related to filing the Motion under Federal Rule of Civil Procedure 37(b)(2)(C)…." *Id*.

3. Rule 37(b)(2)(C) states: "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

4. As the Court noted, the expenses, which include attorney's fees, are mandatory unless the County Defendants failure to timely and appropriately respond to discovery "was substantially justified."

5. The factually assertions made by Plaintiffs in both motions to compel were not disputed by County Defendants. *See* [DOC 44], [DOC 52], [DOC 60], [DOC 73], [DOC 79], and [DOC 88].

6. As demonstrated in Plaintiffs' motions to compel, County Defendants have ignored their responsibilities pursuant to the federal rules of civil procedure, ignored court orders, and engaged in misleading discovery practices that have caused delays and confusion throughout the discovery process. *Id*.

7. Given County Defendants' conduct during the discovery process, an argument that County Defendants' actions were "substantially justified" is untenable.

8. Additionally, County Defendants did not object to the Court's award of attorney's fees in its September 17th order [DOC 88].

9. Unfortunately, the Court's two sanctions for multiple disclosure and discovery violations have not stopped County Defendants' discovery violations.

10. Plaintiffs' counsel recently learned County Defendants failed to accurately respond to several requests for admission (RFA) and failed to produce documents which were requested and in the possession of County Defendants.

11. Mr. J.T. Hayes, County Defendants' collision reconstruction expert, was deposed on December 18, 2019.

12. Mr. Hayes was required to produce his entire file at the time of his deposition.

13. During his deposition, Mr. Hayes produced numerous documents, notes, and photographs which were part of his initial investigation for the New Mexico Association of Counties in 2018 yet were excluded by County Defendants in their responses to discovery requests. *Exhibit No. 11*: Deposition of J.T. Hayes, p. 125, ln. 20 – p. 127, ln. 6.

14. During the written discovery process, Mr. Esquivel waived privilege to this material, asserted he provided all such material to Plaintiffs, yet it was discovered on December 18, 2019 it existed and was provided to Mr. Esquivel's law partner in early 2018. *Id* at p. 127, ln. 7 – p. 130, ln. 15.

15. On December 17, 2019, Defendant Rudy Fields was deposed.

16. At his deposition, it was discovered Fields denied several critical requests for admission in written discovery, he knew to be true when confront with them during his deposition.

17. Plaintiffs' RFA No. 11 requested Fields to "admit that during all material times alleged in Plaintiffs' Amended Complaint [DOC 1-4] on September 28, 2017 you were acting under the color of state law and within the scope of your duties and employment with the

Sandoval County Sherriff's Officer [sic] in Sandoval County, New Mexico." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

18. Defendant Fields denied he was acting under the color of state law and within the scope of his duties and employment with Sandoval County Sherriff's Office. *Id*.

19. During his deposition, Fields admitted he was acting in his capacity as a law enforcement officer on that day at the relevant times in Plaintiffs' complaint. *Exhibit No. 13*: Deposition of Rudy Fields, p. 97, ln. 3 – 7.

20. In Plaintiffs' RFA No. 12, Plaintiffs asked Fields to "[a]dmit that Linda Baragiola's death was the result of your police vehicle, Unite No. E08, a Dodge Ram 4x4, being driven over Linda Baragiola on September 28, 2017." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

21. Fields denied this statement. *Id*.

22. When asked why he denied RFA No. 12 in his deposition, Fields quickly conceded, stating "I would say yes, it was." *Exhibit No. 13*: Deposition of Rudy Fields*,* p. 97, ln. 23.

23. Fields was asked in RFA No. 14 to "[a]dmit that you hit Linda with your patrol vehicle knocking her to the ground on September 28, 2019 [sic]." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

24. Again, Fields denied this statement. *Id*.

25. Fields denied a similar request for admission served on him in April 2019 in RFA No. 4 which stated "[a]dmit that you struck Linda with your patrol vehicle knocking her to the ground before you ran her over with your vehicle." *See Exhibit No.14*: Plaintiff's First Set of Requests for Admission, RFA No. 4.

26. During his deposition Fields admitted "[t]oday, with what we see, yes," responding to a question about what he knows on the day of his deposition happened to Linda. *Exhibit No. 13*: Deposition of Rudy Fields, p. 98, ln. 17.

27. Next, Fields was asked why he denied RFA No. 15 which states "[a]dmit that you knew your police vehicle struck something when your police vehicle first hit Linda." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

28. RFA No. 15 was asked previously to Fields in RFA No. 5. *Exhibit No. 14*: Plaintiffs' First Set of Requests for Admission.

29. Again, Fields admitted what he had previously denied during written discovery stating, "I either hit something or I – something hit my vehicle, but it was – all I can remember was the sound that I heard, and it sounded like – again, like something banged against some tin. It was really, really quiet." *Exhibit No. 13*: Deposition of Rudy Fields, p. 100, ln. 22 – 25.

30. RFA No. 17, Plaintiffs asked Fields to "[a]dmit that running over Linda Baragiola with your patrol vehicle caused her death." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

31. Fields denied RFA No. 17. *Id*.

32. When asked why he denied this statement, Fields claimed he was confused about the statement but then admitted, "the vehicle itself, yes, going over her head and her neck, of course, would definitely cause her death." *Exhibit No. 13*: Deposition of Rudy Fields, p. 101, ln. 16 – 17.

33. Fields also denied RFA No. 19 which states, "[a]dmit that if Linda Baragiola was visible out of your rear window as you were exiting the property at 02 Trails West Rd. on

7

September 28, 2017, she would have been in your directly line of sight prior to your police vehicle hitting her." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

34. Fields admitted in his deposition that Linda would have "quite possibly" been in his direct line of sight. *Exhibit No. 13*: Deposition of Rudy Fields, p. 103, ln. 10.

35. RFA No. 20 states, "[a]dmit that if you chose to drive your police vehicle in reverse out of the driveway for over 30 feet without ever looking out of your rear window and your hit Linda causing her death, you would have been driving recklessly." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

36. Fields denied RFA No. 20 in written discovery. *Id*.

37. When confronted with this denial, Fields admitted such conduct would be reckless stating, "Yeah. If they're not looking, yes." *Exhibit No. 13*: Deposition of Rudy Fields, p. 106, ln. 20.

38. Plaintiffs' RFA No. 21 requested Fields to "[a]dmit that if, while you drove your patrol vehicle in reverse exiting the driveway at 02 Trails West Rd. on September 28, 2017, you saw Linda Baragiola behind your patrol vehicle and still continued to drive in reverse, hitting Linda Baragiola, your actions would have been intentional." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

39. Once again, Fields denied the RFA. *Id*.

40. Fields admitted in his deposition such conduct would be intentional stating, "yeah, that happened, then yes." *Exhibit No. 13*: Deposition of Rudy Fields, p. 107, ln. 24 – 25.

41. Lastly, RFA No. 22 states, "[a]dmit that if, while you drove your patrol vehicle in reverse exiting the driveway at 02 Trails West Rd. on September 28, 2017, you were distracted to

8

the point where, while looking out your rear window, you looked at Linda Baragiola, but did not recollect seeing her, you should not have been driving while distracted." *Exhibit No. 12*: Plaintiffs' Second Set of Requests for Admission.

42. Fields denied this statement. *Id*.

43. When asked if this statement was true during his deposition, Fields affirmed, "In this Yes. Hypothetically, according to you, yes." *Exhibit No. 13*: Deposition of Rudy Fields, p. 109, ln. 1.

44. Fields's responses revealed that despite being sanctioned twice by this Court for discovery and disclosure violations, he has continued to engage in misleading and inaccurate discovery responses.

45. On October 21, 2019, Plaintiffs' counsel sent County Defendants an invoice for the attorney's fees relating to the filing of Plaintiffs' second motion to compel [DOC 60] in the amount of $13, 565.28. *Exhibit No. 1*: October 21, 2019 Letter to Mr. Esquivel with attached invoice; *Exhibit No. 10*: Cristy J. Carbón-Gaul Affidavit with attachment.

46. The invoice totaled 50.3 billable hours at a rate of $250.00 per hour. *Id*.

47. The billable time referenced was a blended rate for time worked by Plaintiffs' counsel, Ms. Cristy J. Carbón-Gaul, a lawyer with over twenty (20) years of experience, work performed by Mr. Jack B. Jacks, a lawyer with over twenty (20) years of experience, including seven (7) years in complex civil rights litigation, who has been acting in the capacity as an experienced paralegal throughout the active litigation of this case, and Jeanette Bond, a paralegal with over 20 years of experience.

48. Mr. Jacks is currently on Disability Inactive Status and therefore not currently practicing as an attorney.

49. The blended rate identified above in paragraph 47, in addition to the work performed by Ms. Carbón-Gaul, includes all paralegal time devoted toward the discovery issues, correspondence, drafting, preparation and filing of Plaintiffs' second motion to compel [DOC 60].

50. In preparation for Plaintiffs' fee petition, Plaintiffs' counsel engaged Mr. Phil Davis, as fee counsel to opine regarding the reasonableness of the $250 hourly rate billed by Ms. Carbón-Gaul. *Exhibit No. 9*: Affidavit of Phil Davis.

51. Mr. Davis is an experienced litigator, highly respected lawyer, and has extensive experience as fee counsel and as a fee dispute mediator/arbitrator. *Id*.

52. Mr. Davis reviewed Ms. Carbón-Gaul's fee invoice and hourly rate. *Id*.

53. In his professional opinion, Ms. Carbón-Gaul's hourly rate is reasonable and fair. *Id*.

54. Additionally, Mr. Davis stated Ms. Carbón-Gaul's hourly rate of $250 is on the lower end of attorneys in New Mexico with her comparable experience. *Id*.

55. On October 29, 2019, Mr. Esquivel responded to Plaintiffs' October 21, 2019 letter. *Exhibit No. 2*: October 29, 2019 Email from Mr. Esquivel.

56. Mr. Esquivel objected to the scope and amount of Plaintiffs' invoice. *Id*.

57. Mr. Esquivel also claimed confusion regarding the Court's award of attorney's fees. *Id*.

58. Specifically, Mr. Esquivel claimed, it was his understanding of the Court's September 17, 2019 order [DOC 88] that the Court was referencing its June 24, 2019 order's grant of attorney's fees when the Court stated: "Plaintiff Shannon Szuszalski's request for the Court

to order mandatory expenses and attorney's fees related to filing the Motion under Federal Rule of Civil Procedure 37(b)(2)(C) is **GRANTED**." [DOC 88, p. 2]. *See Exhibit No. 2*: October 29, 2019 Email from Mr. Esquivel.

59. The Court was clear and unambiguous.

60. The Court granted two separate motions to compel, three months apart, for separate discovery violations and failure to comply with Court orders. *See* [DOC 52] and [DOC 88].

61. On October 30, 2019, Plaintiffs' counsel detailed the procedural history, past communications regarding Mr. Esquivel's erroneous assertions, and demonstrated the differences between this Court's two orders. *Exhibit No. 3*: October 30, 2019 Letter to Mr. Esquivel.

62. On November 1, 2019, Plaintiffs' counsel sent Mr. Esquivel another letter discussing the Court's two separate orders. *Exhibit No. 4*: November 1, 2019 Letter to Mr. Esquivel.

63. Plaintiffs' counsel requested Mr. Esquivel consult with his clients about how they wish to address the second invoice relating to Plaintiffs' second motion to compel [DOC 44]. *Id*.

64. On November 6, 2019, Plaintiffs' counsel sent Mr. Esquivel a follow-up letter requesting a response to the previous correspondence by noon on November 8, 2019. *Exhibit No. 5*: November 6, 2019 Letter to Mr. Esquivel with related Email Correspondence.

65. Mr. Esquivel responded on November 7, 2019 requesting until Monday November 11, 2019 to speak with his clients "to see if there is something we can work out." *Id*.

66. Plaintiffs' counsel agreed to Mr. Esquivel's request.

67. Mr. Esquivel responded at 5:03pm on November 11, 2019. *Exhibit No. 6*: November 11, 2019 Email and attachment from Mr. Esquivel.

68. Mr. Esquivel made two suggestions. First, Mr. Esquivel suggested he could file a motion to clarify this Court's order [DOC 88] and the procedure Plaintiffs are required to use to obtain satisfaction of the sanctions or, second, Plaintiffs' could suggest a lower amount to be paid. *Id*.

69. On November 19, 2019, Plaintiffs' counsel sent Mr. Esquivel a letter responding to his November 11th email. *Exhibit No. 7*: November 19, 2019 Letter to Mr. Esquivel.

70. As Mr. Esquivel's November 11th email indicated County Defendants wanted to negotiate a resolution without the necessity of filing this motion, Plaintiffs' counsel requested County Defendants propose a counteroffer to resolve this matter within ten (10) days (November 29, 2019). *Id*.

71. Mr. Esquivel did not respond within that timeframe.

72. On December 2, 2019, Plaintiffs' counsel sent a follow-up email requesting a response to the November 19th letter. *Exhibit No. 8*: December 2nd and 3rd Email Exchange

73. Mr. Esquivel responded on December 3, 2019 indicating his continued belief that the Court's award of fees and costs regarding Plaintiffs' second motion to compel [DOC 60] was only referencing the Court's first award of attorney's fees from Plaintiffs' first motion to compel. *Id*.

74. Mr. Esquivel also indicated he would file a motion to clarify the Court's order if an agreement could not be reached. *Id*.

75. To date, no motion to clarify has been filed.

III.     ARGUMENT

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called "lodestar amount" of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee. The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.' " *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). It is Plaintiffs' burden to establish the rate and fee are reasonable. In order to establish the reasonableness of the rate, Plaintiffs must establish the rate applied is in line with the prevailing market rate for Albuquerque lawyers with similar experience and knowledge. *See Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (internal citations omitted).

Plaintiffs' "burden is satisfied by submitting a fee application containing sufficiently detailed information about the hours logged and the work done that permits the district court to make an independent determination whether or not the hours claimed are justified." On the other hand, the fee application need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Cobell v. Norton, 231 F. Supp. 2d 295, 305–06 (D.D.C. 2002) (internal quotations and citations omitted). "The touchstone inquiry is whether the time expended on particular tasks was reasonable. Parties cannot be reimbursed for nonproductive time or duplicative activities. However, contests over fees should not be permitted to evolve into exhaustive trial-type proceedings." *Id* at 306.

In addition to the Court's award of the attorney's fees for the Rule 37 sanctions, "[a]ttorneys' fees can also be awarded under Rule 37(a)(5)(A) for the time spent preparing fee statements and defending awards of attorneys' fees. *See Cobell v. Norton*, 231 F. Supp. 2d 295,

13

306-07 (D.D.C. 2002); *L.H.H. ex rel. Hernandez v. Horton*, 2015 WL 1057466, at *5 (N.D. Ind. March 10, 2015) ('[T[he Court concludes that Rule 37 does not prevent recovery of fees resulting from the time spent reviewing the Court's Order on the Motion to Compel or the work done on the fee petition briefing.')" *Chung v. Lamb*, No. 14-CV-03244-WYD-KLM, 2018 WL 7141325, at *2 (D. Colo. June 7, 2018).

County Defendants have continued to violate discovery rules despite being sanctioned twice by this Court. This is evidenced above by: 1) Defendant Rudy Fields's denial of RFA's knowing the statements to be true; and 2) County Defendants withholding documents which opposing counsel had in his possession since March 2018. This revelation during Mr. Hayes's deposition is particularly troubling given the numerous times Mr. Esquivel denied having such material, denied know where the limited documents he did have came from, and his assertion all of Mr. Hayes's investigative materials from 2018 had been produced. County Defendants responses were not simply inaccurate, they have the appearance of being purposely misleading. *See Section II* [DOC 44] and *Section II* and *Section III* [DOC 60].

Plaintiffs' second motion to compel [DOC 60] and the discovery violations revealed during the Hayes's and Fields's depositions have established, without any factual objections or corrections, three central facts. First, the significant time Plaintiffs had to devote to obtaining routine and uncontroversial discovery. Second, it was necessary in order for Plaintiffs to obtain discovery from County Defendants, to elicit the assistance of the Court; and third, County Defendants have continued to violate the rules of discovery, orders from this Court, and mislead the parties as to the facts of the case.

**WHEREFORE**, Plaintiffs request the Court enter an order requiring County Defendants to pay the attorney's fees referenced in *Exhibit No. 1* and issue an order requiring County Defendants to pay Plaintiffs for the attorney's fee and costs of hiring fee counsel associated with the filing of this fee petition.

Respectfully submitted,

THE LAW OFFICE OF CRISTY J. CARBÓN-GAUL

By: /s/ *Cristy J. Carbón-Gaul*
    Cristy J. Carbón-Gaul
10515 4th St NW
Albuquerque, New Mexico 87114
Telephone: 505-899-5696
Email address: cristy@carbon-gaul.com

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 6th day of January 2020,
I filed the foregoing electronically through CM/ECF, which
caused all Counsel of Record to be served by electronic means:

| | |
|---|---|
| Martin Esquivel | James Barrett and |
| Attorney for County and Defendants Fields and Wood | Marianne Bowers |
| Esquivel and Howington, LLC | Attorneys for Defendant Janet Lopez |
| 111 Lomas Blvd. N.W., Suite 203 | P. O. Box 25305 |
| Albuquerque, NM 87102 | Albuquerque, New Mexico 87125 |

/s/ *Cristy J. Carbón-Gaul*
    Cristy J. Carbón-Gaul