IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANNON SZUSZALSKI, as personal representative
for the ESTATE OF LINDA BARAGIOLA, and
SHANNON SZUSZALSKI, individually,

      Plaintiff,

v.                                                                                                  No. 1:19-cv-0250 RB-CG

RUDY FIELDS, individually, SANDOVAL
COUNTY BOARD OF COMMISSIONERS,
DOUGLAS C. WOOD, individually, and
JANET LOPEZ, individually.

      Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court revisits the tragic events leading to Linda Baragiola's death. After Janet Lopez's home alarm sounded, Baragiola crossed the street to check her neighbor's property. When the police arrived, Baragiola briefly spoke with them and proceeded to return home. Deputy Rudy Fields placed his car in reverse, not knowing that Baragiola was behind the vehicle. She was struck and killed at the scene. Her estate, through Shannon Szuszalski, brought suit against Fields, the Sandoval County Board of Commissioners, and Sheriff Douglas Wood (Defendants).[1]

Before the Court are Defendants' Motion for Summary Judgment (Doc. 133) related to the federal claims, as well as Szuszalski's Motion for Summary Judgment (Doc. 134). In addition, Defendants filed a Motion for Partial Summary Judgment on the Loss of Consortium claim (Doc. 87) and two Motions in Limine (Docs. 131; 132) regarding expert testimony. Szuszalski also filed a Motion to Strike a Substantive Change to Fields's Deposition (Doc. 152). Given that no constitutional violation exists in this matter, the Court will (a) grant the Defendants' Motion on

---

[1] The claims against Defendant Janet Lopez were dismissed on December 11, 2019. (Doc. 113.)

the federal claims, (b) remand the remaining state law claims, and (c) deny as moot the other pending motions.

I. **Background**

Baragiola and Lopez were friends and neighbors. (Doc. 1-4 (Am. Compl.) ¶¶ 16, 22.) Lopez had a security system installed in her home and designated Baragiola as a backup contact. (Doc. 133-7 at 48:12–25.) If the security system was triggered and the alarm company could not reach Lopez, the alarm company would contact Baragiola instead. (*Id.*) On September 28, 2017, Lopez's security system was triggered; both the alarm company and Lopez contacted Baragiola. (*Id.* at 49:22–25; Doc. 133-1 at 3.) Detective Tomlinson, one of the officers who responded to the alarm, questioned Baragiola because she was on Lopez's property when the officers arrived. (Doc. 133-1 at 3.)

Deputy Fields also responded to the alarm and parked his truck in the U-shaped driveway of Lopez's "residence, a considerable distance from the street." (*Id.*; Doc. 133-8.) His vehicle was equipped with a front camera, which showed Detective Tomlinson speaking with Baragiola in front of the vehicle for approximately 26 seconds, before she began walking toward the back of the truck. (Docs. 133-1 at 6–7; 133-2 at 65:14–25; 134-4 at 66:11–12.) Baragiola walked directly behind the truck and toward her home across the street. (Doc. 147-1 at 22:15–19.)

At that moment, Deputy Fields received a call from dispatch for a non-emergency matter. (Docs. 133-2 at 8:17–9:8; 64:1–5; 134-4 at 9:9–11.) Although Deputy Fields could have driven through the U-shaped driveway toward Detective Salas, he instead chose to reverse approximately 50 feet toward the street. (Doc. 133-2 at 9:9–23.) While backing his vehicle up, he remained on the phone with dispatch while typing the new address into his computer. (*Id.* 9:1–23; Doc. 134-4 at 62:1–7; 71:1–76:23.) As he reversed his vehicle slowly without his emergency lights or sirens

activated, he hit Baragiola with the rear bumper and tailgate of the truck. (Doc. 133-2 at 100:22–25.) After the impact, Fields looked at his mirrors to determine whether he hit anything. (Doc. 134-4 at 36:11–12.) Not seeing anything, he continued to drive backwards. (*Id.* at 188:20–189:3.) The tire of the truck then drove over Baragiola, causing her death. (Doc. 133-2 at 97:8–23.) After the incident, Sheriff Wood monitored the review of the incident, claiming that this was the first vehicular death of its kind during his tenure. (Doc. 147-9 at 73:12–17.)

Szuszalski brings two federal claims: substantive due process (Count II) and negligent training and supervision (Count IV) through 42 U.S.C. § 1983. In addition, Plaintiff brings several state law claims: wrongful death under the New Mexico Constitution (Count I); battery under the New Mexico Tort Claims Act (NMTCA) (Count III); negligent training and supervision under the NMTCA (Count IV); loss of consortium (Count V); and negligence (VI).

**II.      Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (reiterating the standard). Genuine issues are those that "a rational trier of fact could resolve . . . either way," and material facts are "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted). The parties must provide support, and the Court will make all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party does so, "the burden

shifts to the nonmoving party to set forth specific facts showing that there is a genuine triable issue." *Johnson v. City of Roswell*, 752 F. App'x 646, 649 (10th Cir. 2018) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). Cross-motions for summary judgment are treated separately if possible, *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979), and courts will deny the motions if disputed material facts remain, *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

### III. Section 1983 Claims

Section 1983 provides that: "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . . ." 42 U.S.C. § 1983. "Color of law" means that officer actions are cloaked with state authority. *West v. Atkins*, 487 U.S. 42, 49 (1988). Section 1983 acts as a vehicle for constitutional violations, allowing individuals to recover monetary damages from state officers in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991).

Individual officers accused of violating constitutional rights, however, may receive qualified immunity. *See id.* at 28. Thus, to recover against state officers, a plaintiff must show that an official's actions "violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted) (emphasis added). *Clearly established* means that the law must be so "indisputable" and "unquestioned" that the officer is placed on notice. *See Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011) (citation omitted).

#### a. Substantive Due Process Claim Against Fields (Count II)

Substantive due process derives from the Fourteenth Amendment's protection against

governmental deprivations of rights "without due process of law." U.S. Const. amend. XIV. This doctrine is primarily aimed at protecting "matters relating to marriage, family, procreation, and the *right to bodily integrity*." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (emphasis added) (citation omitted). Given the broad scope of such rights, the Supreme Court has limited substantive due process protection to "only the most egregious official conduct" that is "arbitrary in the constitutional sense." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citation and internal quotation omitted). Specifically, substantive due process claims are "predicated on a state action manifesting one of two traditional forms of wrongful intent—that is, either (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (citation omitted); *see also Ward v. Anderson*, 494 F.3d 929, 938 (10th Cir. 2007) (same).

Under the "intent to harm" standard, which is used to analyze emergency situations such as a high-speed chase, an officer will not be liable for a substantive due process violation absent evidence that the officer specifically intended to cause injury. *See Lewis*, 523 U.S. at 854. Outside of an emergency context, "when actual deliberation [by the officer] is practical," courts use the second standard—the "deliberate indifference" standard—which examines whether the officer intended to place an individual in harm's way. *Id.* at 851; *see also Browder v. City of Albuquerque*, No. CV 13-599 RB/KBM, 2014 WL 12487667, at *6 (D.N.M. Mar. 13, 2014). The Court is further guided by: "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002) (citation omitted); *see also Valdez v. New Mexico*, 109 F. App'x. 257, 262 (10th Cir. 2004) (applying the same standard).

Here, the parties filed cross-motions for summary judgment on the substantive due process claim. (Docs. 133 at 13; 134 at 17.) Fields urges the Court to analyze this claim under the specific intent standard, because he was responding to an *emergency* call from dispatch. (Doc. 133 at 13–15.) In focusing on Defendants' Motion for Summary Judgment, the Court must look at the evidence in a light favorable to the nonmoving party. Szuszalski's telling of events unfolds as follows: Before backing up, Baragiola had been standing in front of Fields's vehicle for about 26 seconds. (Doc. 134-4 at 66:11–12.) When Fields was in the vehicle, dispatch called to inform him of another residential alarm (*id.* at 62:1–7), an event not considered an emergency (*id.* at 9:9–11). While backing up, Fields was looking at his GPS, typing the new address into his phone, and talking to dispatch. (*Id.* at 71:1–76:23.) Once Fields struck Baragiola, he claimed that it was quiet, like hitting a "tin can." (*Id.* at 36:8–11.) After the initial impact, Fields checked his mirrors again to ensure that he did not hit anyone. (Doc. 134-4 at 36:11–12.) He did not see anything, so he continued to drive backwards for approximately eight seconds.[2] (*Id.* at 188:20–189:3.)

Defendants argue that, under the emergency standard, Fields is not liable for a substantive due process violation because he had no intent to injure Baragiola when he reversed his vehicle in the driveway. *See Lewis*, 523 U.S. at 854. In *Radecki v. Barela*, an officer ordered a bystander to assist him in subduing a suspect, and the bystander was killed when the suspect regained control of his weapon. *See* 146 F.3d 1227, 1228 (10th Cir. 1998). The court held that the officer acted under urgent conditions and had no specific intent to injure the bystander. *See id.* at 1232. In *Lewis*, an officer was in pursuit of two motorcycle riders. *See* 523 U.S. at 836–37. During the chase, a rider fell off, and the officer struck him. *See id.* at 837. The Court held that when there is no intent

---

[2] Szuszalski argues that Fields must have seen Baragiola (*see* Docs. 134 at 17; 134-5 at 127:17–22 (Szuszalski's crash reconstruction expert claiming that Baragiola would have been visible in Fields's mirrors)), but she provides no credible evidence to support that claim. The Court finds that it strains credulity to argue that Fields saw and intentionally ran over Baragiola.

6

to harm during a chase, no Fourteenth Amendment liability exists. *See id.* at 854. Szuszalski has provided no facts to suggest that Fields intended to strike Baragiola as he backed out of the driveway. Regardless, the facts of Fields's departure from the scene do not suggest that he was responding to an *emergency* situation. As a result, the Court finds it more appropriate to apply the deliberate indifference standard to these facts.

Szuszalski argues that Fields acted with deliberate indifference because he failed to carefully check his surroundings to ensure the safety of nearby individuals. (Doc. 134 at 19.) The deliberate indifference "form of intent is frequently referred to as 'reckless' conduct." *Uhlrig*, 64 F.3d at 574 n.8 (citation omitted). Such conduct can amount to a constitutional violation when "the defendant recognizes the unreasonable risk and actually intends to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.* (citations omitted). But reckless behavior alone is not enough; the action must be so egregious that it not only places the plaintiff in danger, but it also shocks the conscience. *See id.* at 574. In *Uhlrig*, a patient at a mental hospital killed a therapist who worked there, and her estate argued that hospital administrators improperly moved the patient to the general population. *See id.* at 570–71. The Tenth Circuit ruled that the transfer, though a tragic mistake, did not rise to the level of conscience-shocking deliberate indifference. *See id.* at 574. Here, Fields may have been negligent in driving with distractions and failing to check his mirrors thoroughly before placing his vehicle in reverse, but Szuszalski has not shown that Fields's behavior created a conscience-shocking unreasonable risk that recklessly placed Baragiola in danger.

The decisions in *Green v. Post* and *Browder v. City of Albuquerque* are illustrative of the deliberate indifference standard. In *Green v. Post*, an officer was chasing an individual accused of not paying $30 at a gas station. *See* 574 F.3d 1294, 1296 (10th Cir. 2009). Without having its lights

or sirens activated, the police car struck another vehicle in an intersection. *See id.* at 1296–97. These facts did not support a finding of liability under the deliberate indifference standard because the officer was pursuing a government interest, "which, while not an emergency, nonetheless required a rapid response . . . ." *See id.* at 1303–04. Contrast *Green* with *Browder*, where an officer arbitrarily sped through intersections for eight miles before striking another vehicle. *See* 2014 WL 12487667, at *2. The officer's reckless behavior advanced no government interest, so the Court held that a substantive due process violation existed. *Id.* at *5–6. In the present case, Fields was leaving Lopez's home in response to another incident. This was not an emergency, but Fields's actions were taken in response to his police responsibilities. While Fields failed to check his surroundings before placing his vehicle in reverse, the Court cannot hold that he intended to place Baragiola in harm's way, such that it shocks the conscience.

Making reasonable inferences in light of Szuszalski's facts, the Court finds that Fields had no specific intent to injure Baragiola, nor did he act with deliberate indifference in placing his vehicle in reverse without properly checking his surroundings. While the outcome of Fields's conduct was tragic and avoidable, it was not unconstitutional. Under either standard, Szuszalski has failed to show that Deputy Fields violated Baragiola's substantive due process rights. Thus, the Court need not determine whether Fields's actions violated clearly established law. Fields is entitled to qualified immunity, and the Court will grant Defendants' Motion for Summary Judgment and deny Szuszalski's motion with respect to Count II.

### b. Negligent Hiring, Training, and Supervision (Count IV)

Szuszalski alleges that both Sandoval County and Wood are liable for negligent training that led to Baragiola's death. (*See* Am. Compl. ¶¶ 177–86.) Defendants moved for summary judgment on behalf of both. (Doc. 133 at 23–26.) Szuszalski, however, only responded to the

supervisory liability claim against Wood, and not to the claim against Sandoval County. (Doc. 147 at 23–24.) Thus, she has waived the latter claim, *see Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1222 (10th Cir. 2017), and Defendants' Motion for Summary Judgment on the municipal liability claim is granted. As a result, the Court only addresses Wood's liability below.

Finding supervisory liability requires that a plaintiff show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)); *see also Holmstrom v. Bd. of Cty. Comm'rs for Cty. of Chaves*, 181 F. Supp. 3d 862, 878 (D.N.M. 2016) (reiterating the standard).

Because the Court has determined that Szuszalski's substantive due process claim fails, the negligent training claim necessarily fails as well. *See* 662 F.3d at 1164. Nevertheless, even if Szuszalski had made out a substantive due process claim, she would not be able to satisfy *Brown*'s other elements. Per the first prong, Szuszalski offers no evidence to demonstrate that Wood "promulgated, created, implemented or possessed responsibility for" a policy causing a constitutional violation. *Id.* She alleges that Wood "epitomizes failure to supervise" (Doc. 147 at 23 (quotation marks omitted)), and she offers deposition testimony from other officers to confirm Wood's inattentiveness (Doc. 147 at 23 (citing Doc. 147-10 at 60:21–61:24)).[3] But she does not connect this behavior to a relevant policy or lack thereof that caused the violation. Defendants infer that the only potential policy at issue would be one "requiring the use of backup cameras, or

---

[3] Szuszalski claims that Fields was involved in other accidents, and that Wood failed to reprimand and supervise after those events. (Doc. 147 at 23.) These claims, however, are made in a heading and then never addressed in detail or supported with record evidence.

9

its omission of a training program on the use of backup cameras." (Doc. 133 at 24.) The Court can envision other iterations of such a policy, which might include additional vehicular training programs, as well as specific protocol to avoid distractions while driving. But regardless of how such training is characterized, Szuszalski has provided no evidence to suggest that the lack of policy caused the constitutional violation. While additional policies and procedures might help officers act with greater caution, it is unlikely that their absence results in constitutional violations of this ilk.

In addition, Szuszalski would need to show that Wood had the requisite state of mind to satisfy the third prong. Again, she argues that he failed to supervise and attend to his duties as sheriff. These allegations, however, are conclusory at best. The only facts used to support these claims are from deposition testimony, stating that Wood was frequently absent. (Doc. 147-10 at 60:21–61:24.) While it might be true that Wood was not the most attentive supervisor, a constitutionally-rooted negligent supervision claim requires more than lackluster management. Szuszalski has provided no evidence to show that Wood's behavior was so indifferent, such that a constitutional violation of this sort was likely to occur.

Again, the Court found that no substantive due process violation occurred, so no negligent supervision claim can survive. But even if a sufficient constitutional claim were made, it would fail under the *Brown* standard because Szuszalski has not connected the absence of a policy to the violation or shown that Wood had the requisite state of mind. Therefore, the Court will grant Defendants' Motion for Summary Judgment and deny Szuszalski's motion with respect to the Negligent Hiring, Supervision, and Training claim against Sandoval County and Wood.

**IV.     State Law Claims**

After granting summary judgment on the two federal claims, the only remaining claims are wrongful death under the New Mexico Constitution (Count I), battery (Count III), loss of consortium (Count V), and negligence (VI). These claims are all rooted in state law. The Court declines to exercise supplemental jurisdiction over standalone state law issues, *see* 28 U.S.C. § 1367(c)(3), and will remand these claims to state court.

**V.      Additional Pending Motions**

In addition to the summary judgment motions, before the Court are Defendants' two Motions in Limine (Docs. 131; 132) related to expert testimony and Szuszalski's Motion to Strike a Substantive Change to Fields's Deposition (Doc. 152). Since the Court will no longer exercise jurisdiction over this matter, it will deny these motions as moot.

**THEREFORE**,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 133) is **GRANTED IN PART** as to the federal claims (Counts II and IV), and these two claims are **DISMISSED with prejudice**. The Court declines to exercise supplemental jurisdiction over the state law claims and thus **DENIES AS MOOT** the remainder of Defendants' motion.

**IT IS FURTHER ORDERED** that Szuszalski's Motion for Summary Judgment (Doc. 134) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on the Loss of Consortium claim (Count V) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Motions in Limine (Docs. 131; 132) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Fields's Motion to Change his Deposition (Doc. 152) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the state law claims are **REMANDED** to the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**